UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

EARL BRISTOW FEELINGS,

                Plaintiff,

                **REPORT AND RECOMMENDATION**
                18 CV 5893 (LDH) (CLP)

    - against –

POLICE OFFICER ELIAS DALLIS,

                Defendant.

-------------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

On October 19, 2018, plaintiff Earl Bristow Feelings, proceeding *pro se,* filed this action pursuant to 42 U.S.C. § 1983, against John Doe, later identified as Police Officer Ellias Dallis,[1] the New York City Police Department ("NYPD"), and the City of New York, alleging that in October 2017, he had been subjected to excessive force and suffered personal injuries during the course of his arrest by Officer Dallis on charges of petit larceny.

In a Memorandum and Order, dated March 14, 2019, the Honorable LaShann DeArcy Hall dismissed plaintiff's claims against the City and the NYPD, but allowed the claims against Officer Dallis to proceed. (Order at 3-4). At that time, the judge also granted plaintiff's motion for leave to proceed *in forma pauperis* against the officer. (Id. at 1).

---

[1] In her Memorandum and Order, dated March 14, 2019 ("Order"), ECF No. 5, the Honorable LaShann DeArcy Hall directed the Corporation Counsel for the City of New York to ascertain and provide the full name of Officer John Doe. (Order at 4). The Corporation Counsel provided Officer Dallis' name on April 26, 2019 and a summons was issued and returned executed by Officer Dallis on May 14, 2019. (ECF Nos. 9, 10).

1

On January 3, 2020, Officer Dallis filed a motion to revoke plaintiff's *in forma pauperis* status, arguing that under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915, plaintiff's *in forma pauperis* status should be revoked because Mr. Feelings had filed three prior lawsuits while in the custody of the New York City Department of Correction that have been dismissed as meritless. (Def.'s Mem.[2] at 4). For the reasons set forth below, this Court respectfully recommends that defendant's motion be granted and that plaintiff's *in forma pauperis* status be revoked.

## DISCUSSION

A. The Prison Litigation Reform Act

Pursuant to 28 U.S.C. § 1915(a), indigent individuals are granted *in forma pauperis* ("IFP") status and authorized to file civil actions in federal court even when they are unable to pay or give security for a filing fee. When Congress originally enacted this provision in 1892, it was designed to open the federal courts even to the most impoverished individuals. In 1966, Congress enacted the Prison Litigation Reform Act ("PLRA"), which amended § 1915 to include, inter alia, the "three strikes rule," which was intended to discourage prisoners from filing meritless claims in federal court. See 28 U.S.C. § 1915(g). Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

---

[2] Citations to "Def.'s Mem." refer to the Memorandum in Support of Defendant's Motion to Revoke Plaintiff's In Forma Pauperis Status, filed January 3, 2020, ECF No. 41.

28 U.S.C. § 1915(g). In Jones v. Bock, the Supreme Court explained that by enacting this amendment, Congress intended to "ensur[e] that the flood of nonmeritorious claims [by prisoners submitted to federal courts] does not submerge and effectively preclude consideration of the allegations with merit." 549 U.S. 199, 203, 127 S. Ct. 910, 914, 166 L. Ed. 2d 798, 806 (2007) (noting that "nearly 10 percent of all civil cases filed in federal courts" are prisoner complaints, and that "[m]ost of [them] have no merit; many are frivolous"); see Ortiz v. McBride, 380 F.3d 649, 658 (2d Cir. 2004) (noting that "the purpose of the PLRA . . . was plainly to curtail what Yes, it does. I've added in a footnote, does that cover it? Ortiz does mention the strike provision in a footnote but that's the only discussion I saw.Congress perceived to be inmate abuses of the judicial process"); see also Ruggiero v. County of Orange, 467 F.3d 170, 17 (2d Cir. 2006) (discussing the provision of the PLRA that requires exhaustion of administrative remedies, and noting that the 1996 enactment of the PLRA was intended to "'invigorate [] the exhaustion prescription" for prisoners) (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)).[3]

The Second Circuit Court has joined at least five other circuits in finding that the PLRA's three strikes rule, directing the denial of IFP status pursuant to § 1915(g), is constitutional, and does not "violate[] a prisoner's right of access to the courts or is impermissibly overbroad." Polanco v. Hopkins, 510 F.3d 152, 153-54 (2d Cir. 2007) (holding that "[w]e find none of [plaintiff's] constitutional challenges persuasive and join the other circuits that have upheld the constitutionality of this statute) (citing Rodriguez v. Cook, 169 F.3d 1176, 1178 (9th Cir. 1999); White v. Colorado, 157 F.3d 1226, 1233 (10th Cir. 1998); Rivera v. Allin, 144 F.3d 719, 723-24

---

[3] Although the aforementioned cases focus on the PLRA's requirement that prisoners exhaust administrative remedies prior to seeking relief from the Court, rather than application of the three strikes provision, the Court nevertheless finds that these cases provide informative commentary on Congress' intent in passing the PLRA.

(11th Cir. 1998), abrogated on other grounds by Jones v. Bock, 549 U.S. at 216, 127 S. Ct. at 921, 166 L. Ed. 2d at 813; Carson v. Johnson, 112 F.3d 818, 821 (5th Cir. 1997)).  In Abdul-Akbar v. McKelvie, the Third Circuit explained:

> As citizens, we may disagree with the congressional wisdom, but as judges, knowing the clearly stated legislative purpose, we may not disembowel the legislative act. . . . We are limited to that which has been granted by Congress. What Congress gives it may also take away.  The ability to proceed I.F.P. is not a constitutional right.  Congress granted the right to proceed I.F.P. in 1892, and it has the power to limit this statutorily created right.  Here it has taken away our ability as judges to grant I.F.P. status to a "three strikes" prisoner, no matter how meritorious his or her subsequent claims may be, unless the prisoner "is under imminent danger of serious physical injury" when he or she "bring[s] a civil action." Congress has held trump here, and it has dealt a hand. As judges we must play it.

239 F.3d 307, 316 (3d Cir. 2001) (en banc).

In defining the imminent danger exception, the Second Circuit agreed with the view of other circuits that the use of the present tense in Section 1915(g) means that, for a prisoner to successfully invoke the imminent danger exception to the three strikes rule, "the danger must exist when the action is filed, rather than when the underlying events occurred."  Malik v. McGinnis, 293 F.3d 559, 561-63 (2d Cir. 2002); see also Abdul–Akbar v. McKelvie, 239 F.3d at 313 (finding that "[t]he statute contemplates that the 'imminent danger' will exist contemporaneously with the bringing of the action"); Medberry v. Butler, 185 F.3d 1189 (11th Cir. 1999) (same); Baños v. O'Guin, 144 F.3d 883 (5th Cir. 1998) (same); Ashley v. Dilworth, 147 F.3d 715, 717 (8th Cir. 1998) (same).[4]  In addition, when evaluating whether a

---

[4] The Second Circuit has also held that, to qualify for the imminent danger exception, a three-strike litigant's complaint must "reveal a nexus between the danger the petitioner alleges and the claims [asserted]." Pettus v. Morgenthau, 554 F.3d 293, 296 (2d Cir. 2009).  To determine whether a nexus exists, the court in Pettus instructed district courts to consider: "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges

4

case should be considered and counted as a strike for purposes of this provision, courts consider the incarceration status of the plaintiff at the time the action was filed, not when the action is dismissed. See Harris v. City of New York, 607 F.3d 18, 20 (2d Cir. 2012) (holding that it was "appropriate" for the district court to "dismiss a prisoner-plaintiff's complaint [even] if he has been released from prison subsequent to the filing of his complaint").

However, there has been disagreement as to whether a partial dismissal of only certain claims counts as a strike; courts in this Circuit have held that the entire action must have been dismissed for one of the stated reasons set forth in Section 1915(g) in order to qualify as a strike. Escalera v. Samaritan Vill., 938 F.3d 380, 382 (2d Cir. 2019) (per curiam) (holding that "a prisoner's entire 'action or appeal' must be dismissed on a § 1915(g) ground to count as a strike under the PLRA. Accordingly, mixed dismissals are not strikes under the PLRA"). As the court in Escalera observed, "counting a partial § 1915(g) dismissal as a strike could result in the anomalous situation where a prisoner succeeds on some claims yet still accrues a strike if others are dismissed on § 1915(g) grounds." Id. at 382. See also Tafari v. Hues, 539 F. Supp. 2d 694, 702 (S.D.N.Y. 2008) (noting that "[i]n the interest of reaching a balance between enabling prisoners to bring meritorious suits and reducing the burden on the courts of frivolous suits, strikes should be imposed only when entire actions are dismissed for one of the stated reasons within section 1915(g)"). The court in Tafari found that even though a number of claims in one of the plaintiff's prior cases had been dismissed for failure to state a claim, that case did not constitute a strike and therefore, plaintiff was still entitled to IFP status. Id. The court stated: "Given the Second Circuit precedent concerning related PLRA provisions, we think a ruling that

---

is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury." Id. at 297, 298-99 (emphasis in original).

5

plaintiffs do not incur strikes for partial dismissals for reasons within section 1915(g) is consistent with the purpose and intent of the PLRA. Id.

Other circuit courts have agreed, holding that an action, not an individual claim, counts as a strike. See, e.g., Brown v. Megg, 857 F.3d 287, 290-92 (5th Cir. 2017) (holding that dismissal of "some allegations for failure to state a claim and others at the summary judgment stage for lack of evidentiary support" did not qualify as a strike); Washington v. L.A. Cty. Sheriff's Dep't, 833 F.3d 1048, 1055-57 (9th Cir. 2016) (holding that (1) a dismissal under the doctrine of Heck v. Humphrey, 512 U.S. 477 (1994), does not always constitute a strike; (2) a dismissal under the Younger abstention doctrine (Younger v. Harris, 401 U.S. 37 (1971)) does not always constitute a strike, and (3) dismissed mandamus petitions did not qualify as strikes); Byrd v. Shannon, 715 F.3d 117, 125-26 (3d Cir. 2013) (holding that "a strike under § 1915(g) will accrue only if the entire action or appeal is (1) dismissed explicitly because it is 'frivolous,' 'malicious,' or 'fails to state a claim' or (2) dismissed pursuant to a statutory provision or rule that is limited solely to dismissals for such reasons"); Tolbert v. Stevenson, 635 F.3d 646, 648, 650-651 (4th Cir. 2011) ("considering the provision's plain language," and noting the difference between "claim" and "action," the court found "action" as defined in the Federal Rules of Civil Procedure "to mean an entire suit"); Turley v. Gaetz, 625 F.3d 1005, 1008-1009 (7th Cir. 2010) (holding that a "strike is incurred for an action dismissed *in its entirety* on one or more of the three enumerated grounds") (emphasis in original); Thompson v. DEA, 492 F.3d 428, 432 (D.C. Cir. 2007) (holding that "actions containing at least one claim falling within none of the three strike categories . . . do not count as strikes.").

The Second Circuit has also concluded that dismissal of an action may not count as a strike for any reasons other than those specifically enumerated in § 1915(g). See Escalera v.

6

Samaritan Village, 938 F.3d at 381-82. Thus, if a case is dismissed for procedural reasons, such as dismissal for illegibility, or dismissed with a grant of summary judgment, or dismissed for lack of subject matter jurisdiction, such dismissals do not count as strikes. Other reasons that do not qualify as strikes include dismissal of habeas petitions or dismissal for failure to exhaust administrative remedies. See Jones v. Smith, 720 F.3d 142, 147-148 (2d Cir. 2013) (noting that "dismissals of habeas petitions challenging the prisoner's conviction or the duration of his confinement should not be considered strikes for purposes of the PLRA."[5]); Snider v. Melindez, 199 F.3d 108, 111 (2d Cir. 1999) (stating that "[Section] 1915(g)'s mandate . . . was intended to apply to nonmeritorious suits dismissed with prejudice" because of "a determination that [a nonmeritorious suit] ultimately cannot succeed" while "[f]ailure to exhaust administrative remedies is often a temporary, curable, procedural flaw").

B. Plaintiff's Three Strikes

In moving for an Order revoking plaintiff's IFP status, pursuant to Section 1915(g), defendant has submitted the Declaration of Stephanie Michelle Vilella Alonso, attaching copies of the Complaints and Orders of dismissal in three prior lawsuits brought by Mr. Feelings while he was in the custody of the New York City Department of Correction. (Vilella Decl.[6], Exs. D, E, F).

The first case defendant cites as a strike was a lawsuit Mr. Feelings brought in the Southern District of New York, alleging violations of Section 1983 of the Civil Rights Act of

---

[5] The court qualified its holding by "express[ing] no opinion, however, about whether habeas petitions that challenge a prisoner's conditions of confinement . . . or those challenging civil confinement would constitute strikes." Jones v. Smith, 720 F.3d at 147.

[6] Citations to "Villela Decl." refer to the Declaration of Stephanie Michelle Vilella Alonso in Support of Defendants' Motion to Revoke Plaintiff's *In Forma Pauperis* Status, dated January 3, 2020, ECF No. 40. Exhibits D, E, and F are attached to the Declaration at ECF Nos. 40-4, 40-5, and 40-6, respectively.

1964. In that suit, Mr. Feelings claimed that while in the custody of the Manhattan Detention Center, he was fed contaminated food, which caused him to become ill and suffer various damages, including emotional distress. See Earl B. Feelings v. City of New York, et al., 13 CV 6019 (LAP) (S.D.N.Y. 2013). According to the Order of the Honorable Loretta Preska, plaintiff's action was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failing to state a claim on which relief may be granted. (See 9/30/2013 Order[7] at 3, 4, attached as Ex. D to Vilella Decl.). The court found that Mr. Feelings had failed to allege that the prison officials were deliberately indifferent, noting that one claim of food poisoning does not state a constitutional violation. (Id. at 2-3). The court also dismissed the claims brought against the Department of Corrections ("DOC"), noting that the DOC is not a suable entity, and the claim against then-New York City Mayor Michael Bloomberg because it failed to allege any personal involvement on his part. (Id. at 4).

The second action cited by defendant was the case of Earl B. Feelings v. Warden Rose Argo, et al., 14 CV 163 (LAP) (S.D.N.Y. 2014). In this Section 1983 action, Mr. Feelings alleged that prison officials had delayed his outgoing legal mail for a period of 25 days. (6/10/2014 Order[8] at 4, attached as Ex. E to Vilella Decl.) On March 11, 2014, the court had issued an order that afforded Mr. Feelings an opportunity to amend his complaint, because he had failed to allege that he had suffered actual injury as a result of the delay, and he had failed to allege personal involvement on the part of the Warden. (Id. at 1). Although Mr. Feelings filed an amended complaint, the court found that he had failed to cure the deficiencies, and thus

---

[7] Citations to "9/30/2013 Order" refer to Judge Preska's Order of Dismissal, filed September 30, 2013, ECF No. 5.

[8] Citations "6/10/2014 Order" refer to Judge Preska's Order of Dismissal, filed June 10, 2014, ECF No. 9.

8

dismissed the amended complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), stating: "This action therefore must be dismissed for failure to state a claim upon which relief can be granted." (Id. at 4).

The third action which defendant cites as a strike was a Section 1983 action commenced in this Court in which Mr. Feelings alleged claims of false arrest, as well as various state law claims, against Police Officer Carl Caputo and Detective Daniel Fahey. Earl B. Feelings v. P.O. Carl Caputo, et al., 13 CV 6485 (CBA) (CLP) (E.D.N.Y. 2013). At the time he commenced the action, Mr. Feelings was incarcerated at the Anna M. Cross Center in East Elmhurst, New York, on Rikers Island. On August 21, 2015, the Honorable Carol B. Amon adopted this Court's Report and Recommendation, recommending dismissal of Mr. Feelings' claims on the grounds that the claims were not only untimely, but Mr. Feelings had failed to plead sufficient facts to support any of his claims. (1/06/2016 Order[9] at 1, attached to Villela Decl. as Ex. F). Although the court gave Mr. Feelings a number of opportunities to file an amended pleading, he never did so, and the court ultimately dismissed the action as untimely filed and for failure to allege sufficient facts to support his claims. (Id. at 1, 2).

Here, the Court has reviewed the underlying complaints, as well as the written Orders dismissing each of three prior cases, and finds that all were dismissed because the allegations in each one failed to state a plausible claim.[10] Thus, under Section 1915(g), plaintiff should not be allowed to proceed and his IFP status should be revoked.

---

[9] Citations to "1/06/2016 Order" refer to Judge Amon's Memorandum and Order granting Motion to Dismiss, filed January 6, 2016, ECF No. 57.

[10] In Harris v. City of New York, 607 F.3d 18, 20 (2d Cir. 2010), the Second Circuit held that, in determining whether an inmate has had three or more prior lawsuits dismissed as frivolous, malicious or because the allegations fail to state a plausible claim, courts "may rely on docket sheet entries if they indicate with sufficient clarity the grounds for dismissal of prior

9

In opposing defendant's motion, plaintiff claims that these three of his prior lawsuits were not dismissed for the reasons enumerated in 1915(g). (See Pl.'s Resp.[11]). Instead, he argues that "the assumed '3' strikes the defendant is presenting before this case [were] dismissed on the ground of 'DEFAULT JUDGEMENT' [sic] failure to prosecute the claims," (Pl. Resp. ¶ 14). However, the Orders dismissing the cases clearly demonstrate that they were dismissed for failure to state a claim. Plaintiff also cites to a successful suit that he filed after these three enumerated lawsuits, which was not dismissed for failure to state a claim.[12] (Id. ¶ 6 (citing Feelings v. Warden Stukes, et al., 15 CV 1889 (JPO) (S.D.N.Y. March 10, 2015))). A review of the docket sheet shows that defendants never challenged plaintiff's IFP status in that matter. Feelings v. Warden Stukes, et al., 15 CV 1889 (JPO) (S.D.N.Y. March 10, 2015). [13]

The prior orders granting IFP status to Mr. Feelings made no mention of earlier cases that had been dismissed for failure to state a claim, nor is there any compilation of previous strikes acquired by plaintiff that a court would be able to look to in order to determine whether IFP

---

suits." However, in the instant case, this Court examined not only the docket sheets, but also the underlying orders dismissing each case to determine that they qualify as strikes.

[11] Citations to "Pl.'s Resp." refer to plaintiff's Response to Defendant Request For Stay Application – Motion, filed on February 24, 2020, ECF No. 45.

[12] Plaintiff also refers to the case of Parker v. City of New York, No 15 CV 6733, 2018 WL 6338775 (E.D.N.Y. Dec. 4, 2018), in which he claims he was a prevailing party. (Pl. Resp. ¶ 6). However, Parker is a class action lawsuit brought by Roy Parker, through counsel, on behalf of himself and others similarly situated who alleged that the New York City Department of Corrections placed pretrial detainees in solitary confinement or punitive segregation without providing them with due process and for no legitimate purpose. (Parker v. City of New York, No. 15 CV 6733, 2018 WL 6338775, at *1). While Mr. Feelings may have recovered as one of the members of the class, he was not a named plaintiff in the case and did not commence this action.

[13] In Feelings v. Warden Stukes, et al., 15 CV 1889, plaintiff brought a Section 1983 prisoner civil rights claim, alleging that he had been incarcerated beyond his imposed penalty time as a form of discipline. Since the claims were addressed and Mr. Feelings received compensation as part of the class settlement in Parker v. City of New York, No 15 CV 6733, 2018 WL 6338775, his individual action was dismissed. (See Complaint and 7/20/2020 Order in Feelings v. Warden Stukes, et al., 15 CV 1889).

10

status should be denied under Section 1951(g). This Court has not been the only one to question why a plaintiff's IFP status was granted in the first place when there was a history of three or more strikes. In Sloan v. Lesza, the district court had granted IFP status to the plaintiff, unaware of plaintiff-appellee's history of court action. 181 F.3d 857, 858 (7th Cir. 1999). The Seventh Circuit attributed the district court's error to "the difficulty of administering [§ 1915(g)] when dockets teem with frivolous suits." Id. at 858 (noting that "[t]he federal judiciary needs (but lacks) a central database of litigants to whom § 1915 (g) applies"). As the Second Circuit has observed, however, such a database would be difficult to maintain, since courts do not typically issue strikes on the record at the time the action is dismissed. See Deleon v. Doe, 361 F.3d 93, 95 (2d Cir. 2004). In Snider v. Melindez, the court had questioned "whether the entry of a strike [under § 1915(g)] is properly considered at the time an action is dismissed." The court held that issuing a strike "has no practical consequences until a defendant in a prisoner's lawsuit raises the contention that the prisoner's suit or appeal may not be maintained in forma pauperis pursuant to 28 U.S.C. § 1915 because the prisoner has accumulated three strikes." Deleon v. Doe, 361 F.3d at 95 (quoting Snider v. Melindez, 199 F.3d 108, 115 (2d Cir. 1999)).

Mr. Feelings also argues that he should not be subject to the three strikes rule because he falls within the imminent danger of serious physical injury exception. (Pl. Resp. ¶ 15). Plaintiff alleges that he incurred "head contusions[,] mass swelling upon his forehead, back, leg & general excruciating pain from this incident which could have resulted in a tragic fatality." (Id. ¶ 16). In arguing that plaintiff is not entitled to the exception for imminent danger or serious physical injury under § 1915(g), defendant points to the decision of the Second Circuit in Malik v. McGinnis, in which the court stated: "By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those

11

harms that had already occurred." (Def.'s Mem. at 5 (quoting Malik v. McGinnis, 293 F.3d 559, 563 (2d Cir. 2002) (internal quotation omitted)); see also Anderson v. City of New Britain, No. 17 CV 0331, 2018 U.S. Dist. LEXIS 13727, at *3 (D. Conn. Aug. 7, 2018) (holding that the "imminent danger" exception did not apply to plaintiff's allegations of "false arrest, malicious prosecution, and illegal search and seizure" because the defendant "d[id] not allege that he faced imminent danger of harm at the time he filed [the] action"); Dove v. City of Binghamton, No. 14 CV 0627, 2014 U.S. Dist. LEXIS 147996, at *8 (N.D.N.Y. Sept. 8, 2014) (finding that the plaintiff could not establish the relationship between imminent physical harm and his allegations because the claims "stem from his arrest and prosecution that occurred several years ago").

For these same reasons, plaintiff's claims in this case do not fall within the "imminent danger" exception because plaintiff alleges that Police Officer Dallis used excessive force during plaintiff's arrest on October 15, 2017 (Compl.[14] ¶¶ 3-7), and plaintiff has made no showing that he currently faces a threat of imminent danger from this officer. As such, plaintiff has failed to establish the nexus discussed in Pettus v. Morgenthau – namely, that the imminent danger be *"fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury." 554 F.3d at 298-99 (emphasis in original). Here, plaintiff cannot make that showing because the incident that caused danger to the plaintiff has long since concluded.[15]

---

[14] Citations to "Compl." refer to plaintiff's Complaint, filed October 19, 2018, ECF No. 1.

[15] Although plaintiff has cited a number of cases which he argues support his position that he qualifies for the imminent danger exception, these cases in fact confirm that the danger of serious imminent harm must exist at the time the complaint is filed, and not when the underlying incident occurred. (See Pl. Resp. ¶¶ 4, 5 (citing, *inter alia*, Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003) (noting "that the requisite imminent danger of serious physical injury must exist at the time the complaint or the appeal is filed, not when the alleged wrongdoing occurred"); Heimermann v. Litscher, 337 F.3d 781 (7th Cir. 2003) (affirming that any danger

12

Having reviewed the underlying Orders in the three prior cases cited by defendant, it is clear that plaintiff has filed three prior cases while incarcerated that have been dismissed for failure to state a claim under which relief could be granted, bringing plaintiff within the three strikes rule of the PLRA. Since the statutory language of Section 1915(g) is mandatory – "*In no event* shall an inmate bring a civil action or proceeding" under this provision – the court is left with no discretion to grant IFP status unless plaintiff's claims qualify under the imminent danger exception. Here, it is clear that plaintiff's claim of imminent danger relates to the harms he suffered in October 2017, and not any imminent danger that he is currently facing. Accordingly, it is respectfully recommended that plaintiff's IFP status be revoked pursuant to Section 1915(g).

It is further respectfully recommended that unless Mr. Feelings pays the appropriate filing fee within 30 days of the court's decision, that his case be dismissed. In Polanco v. Hopkins, the Second Circuit affirmed the revocation of plaintiff's IFP status under the three strikes rule, and the conditional grant of a motion to dismiss, contingent on the payment of the appropriate filing fee. Polanco v. Hopkins, 510 F.3d 152 (2d Cir. 2007) (per curiam) (affirming the district court's order of dismissal of plaintiff's case in Polanco v. Hopkins, No. 03 CV 6661, 2007 U.S. Dist. LEXIS 20956 (W.D.N.Y. Mar. 19, 2007) unless plaintiff paid the appropriate filing fee within 30 days of the docketing of the district court's decision). See also Pettus v. Morgenthau, No. 05 CV 6598Fe, 2007 U.S. Dist. LEXIS 98085, *19 (W.D.N.Y. Jan. 12, 2007)

---

experienced years ago does not warrant invocation of the imminent danger exception in the present); Malik v. McGinnis, 293 F.3d 559 (discussed *supra* at 4, 11); Abdul-Akbar v. McKelvie, 239 F.3d at 310 (overruling its previous holding that imminent danger "is measured at the time of the alleged incident, not at the time the complaint is filed" and concluding that the question is whether imminent danger exists at the time of filing).

13

(directing plaintiff to pay the filing fee or face dismissal; plaintiff "may have until February 18, 2007 [37 days from the order] to pay the filing fee of $ 250.00 or the action will be dismissed"); Dove v. City of Binghamton, 2014 U.S. Dist. LEXIS 147298, *6 (ordering plaintiff "to pay the full filing fee of $400 no later than thirty (30) days from the date of this Decision and Order").

Accordingly, it is respectfully recommended that unless Mr. Feelings pays the filing fees, his case should be dismissed.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
August 14, 2020

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York

14